# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
|     GERVAISE S. GUYTON, ) | |
| ) | |
| ARBOR GLEN CONDOMINIUM ASSOCIATION,) | Case Number: 18-04704 |
| an Illinois Not-For-Profit Corporation, ) | Judge Janet S. Baer |
| ) | Bankruptcy - Chapter 13 |
|     Creditor, ) | |
| ) | |
| v. ) | |
| ) | |
| GERVAISE S. GUYTON, ) | |
|     Debtor. ) | |

## NOTICE OF MOTION

TO:    See Attached Service List

      On October 5, 2018 at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Janet S. Baer, or any judge sitting in her stead, in Room 240 of the Kane County Courthouse, 100 S. Third Street, Geneva, IL 60134, and then and there present the attached ***Secured Creditor Arbor Glen Condominium Association's Motion for Relief from Stay.***

CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
BRYAN M. WILEY
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 East Van Buren
Naperville, IL 60540
(630) 369-2700


  /s/ Dawn L. Moody
Attorneys for Creditor

## PROOF OF SERVICE

      I, DAWN L. MOODY, an attorney, on oath state, I served this Notice and Motion for Relief from Stay to the persons named on the service list via the method listed at or before 4:00 p.m. on September 28, 2018.

                                                         /s/ Dawn L. Moody

**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

## **SERVICE LIST**

1.     GerVaise S. Guyton - via regular mail
       1110 N. Farnsworth Avenue
       Apt. 105
       Aurora, IL 60505

2.     David M. Siegel - via regular mail and CM/ECF
       David M. Siegel & Associates
       790 Chaddick Drive
       Wheeling, IL 60090

3.     Glenn B. Stearns - via  CM/ECF
       801 Warrenville Road, Suite 650
       Lisle, IL 60532

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
|     GERVAISE S. GUYTON, | ) | |
| | ) | |
| ARBOR GLEN CONDOMINIUM ASSOCIATION, | ) | Case Number: 18-04704 |
| an Illinois Not-For-Profit Corporation, | ) | Judge Janet S. Baer |
| | ) | Bankruptcy - Chapter 13 |
|                        Creditor, | ) | |
| | ) | |
|                 v. | ) | |
| | ) | |
| GERVAISE S. GUYTON, | ) | |
|                        Debtor. | ) | |

## SECURED CREDITOR ARBOR GLEN CONDOMINIUM ASSOCIATION'S MOTION FOR RELIEF FROM STAY

NOW COMES the Secured Creditor, ARBOR GLEN CONDOMINIUM ASSOCIATION, by and through its counsel, Charles M. Keough, Dawn L. Moody, Gabriella R. Comstock, Jonathan D. Wassell and Bryan M. Wiley of Keough and Moody, P.C. who respectfully prays for the entry of an order granting relief from the automatic stay pursuant to 11 U.S.C. Section 362(d), and in support thereof states:

(1)     On February 21, 2018, the above captioned Chapter 13 was filed.

(2)     The Debtor, GERVAISE S. GUYTON is the owner of a unit commonly known as 12500 Arbor Drive, Unit 1601, Alsip, IL 60803.

(3)     The foregoing property is part of the Arbor Glen Condominium Association and is subject to the provisions of the Declaration of Condominium Ownership for Arbor Glen Condominium Association (hereinafter "Declaration"), which was recorded as Document No. 95722737 in the Office of the Cook County Recorder of Deeds, and subsequently amended.

(4)  The Association is a party in interest and is secured by virtue of its Declaration.

(5)  Pursuant to the terms of the Declaration, the Debtor is required to make monthly assessment payments to the Creditor in the amount of $189.00. If assessments are not paid by the 15th day of the month in which they are due, a late charge in the amount of $25.00 is assessed to the account.

(6)  Pursuant to the terms of the Declaration, the Debtor is required to pay all expenses connected with proceedings to collect unpaid assessments and enforce the Declaration terms. These amounts are assessed to the Debtor and deemed a part of the Common Expenses.

(7)  The Debtor has failed to make current monthly assessment payments to the Creditor in conformity with the Declaration since the filing of this bankruptcy action. Attached hereto is a true and accurate statement of account.

(8)  As of September 19, 2018, the amount due to the Creditor for post-petition assessments, late fees and attorney's fees is $1,886.75.

(9)  The property commonly known 12500 Arbor Drive, Unit 1601, Alsip, IL 60803 is not necessary for the Debtor's successful reorganization.

(10) The Creditor lacks adequate protection due to the Debtor's failure to make regular, current monthly payments to the Creditor.

(11) Creditor notified Debtor's attorney of the post-petition default. The post petition default has not been cured in response to said notice. Attached is a true and accurate copy of said correspondence.

(12)   Debtor's failure to make assessment payments jeopardizes the Creditor's ability to meet its scheduled budget or fund reserves, both of which are essential to the maintenance, upkeep, repair and replacement of the common areas as required by the Creditor pursuant to the Declaration recorded in Cook County, Illinois.

(13)   For the reasons set forth above, it would be inequitable to delay the enforcement of any order granting relief from the automatic stay with respect to the Creditor; therefore, Bankruptcy Rule 4001(a)(3) should be waived.

WHEREFORE, Creditor, ARBOR GLEN CONDOMINIUM ASSOCIATION, respectfully requests this court to grant its MOTION FOR RELIEF FROM STAY, for Bankruptcy Rule 4001(a)(3) be waived, and for any and all further relief this court deems just and proper.

Respectfully Submitted,
ARBOR GLEN CONDOMINIUM ASSOCIATION,


By:  _____/s/ Dawn L. Moody_____
         One of its attorneys


CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
BRYAN M. WILEY
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 Est Van Buren
Naperville, IL 60540
(630) 369-2700
X:\client\Arbor Glen Condo\Collections\Guyton\BK\18-04704\Motion for Relief.wpd


**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL
INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

95722737

75-79-8372

# ARBOR GLEN CONDOMINIUM ASSOCIATION

## DECLARATION OF CONDOMINIUM OWNERSHIP FOR ARBOR GLEN CONDOMINIUM ASSOCIATION

TURN-OVER
JAN, 2000

12501 Quinn Drive, Unit 101
12503 Quinn Drive, Unit 102
12505 Quinn Drive, Unit 104
12507 Quinn Drive, Unit 103

24-26-300-031-0000

BOX-333

RECORDING FEE $ 16²⁰⁰
DATE 10/23/95  COPIES 6
OK  9M

Section. From and after the effective date of the amendment referred to in the preceding sentence, the Owner of a Dwelling Unit which is removed in part or in whole from the provisions of this Declaration shall only be liable for the payment of assessments based on the Undivided Interest, if any, allocated to the Dwelling Unit in the amendment.

## ARTICLE VI

6.01  **CREATION OF LIEN AND PERSON OBLIGATION**: The Declarant for each Unit Ownership hereby covenants and each Owner of a Unit Ownership by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be and is deemed to covenant and hereby agrees to pay to the Association such assessments or other charges or payments, together with interest thereon and costs of collection if any as herein provided, shall be a charge on the Unit Ownership and shall be a continuing lien upon the Unit Ownership against which each such assessment is made. Each such assessment or other charge or payment, together with such interests and costs, shall also be the personal obligation of the Owner of such Unit Ownership at the time when the assessment or other charge or payment becomes due.

6.02  **PURPOSE OF ASSESSMENTS**: The assessments levied by the Association shall be exclusively for the purposes of promoting the recreation, health, safety and welfare of members of the Association, to administer the affairs of the Association and to pay the Common Expenses.

6.03  **ANNUAL ASSESSMENT**: Each year at least sixty (60) days before the end of the Association's fiscal year, and at least thirty (30) days before final adoption thereof, the Board shall furnish each Owner with a proposed budget for the ensuing calendar year which shall be subject to the requirements of the Act and which shall show the following, with reasonable explanations and itemizations:

 a) The estimated Common Expenses with an allocation of portions thereof for the payment of real estate taxes, if any;

 b) The estimated amount, if any, to maintain adequate reserves for Common Expenses;

 c) The estimate net available cash receipts from sources other than assessments, including, without limitation, receipts from any leases, licenses or concessions;

 d) The amount of the "Annual Assessment", which is hereby defined as the amount determined in (a) above plus the amount determined in (b) above, minus the amount determined in (c) above, minus excess funds, if any, from the year's operation;

 e) That portion of the Annual Assessment which shall be payable by the Owner with respect to his Dwelling Unit each month until the next Annual

23

Assessment or revised Annual Assessment becomes effective, which monthly portion shall be equal to one-twelfth (1/12th) of the Annual Assessment multiplied by the Dwelling Unit's Undivided Interest.

6.04   PAYMENT OF ANNUAL ASSESSMENT: On or before the first day of the fiscal year and on or before the first day of each and every month thereafter until the effective date of the next Annual Assessment, each Owner of a Dwelling Unit shall pay to the Association, or as it may direct, that portion of the Annual Assessment which is payable by such owner.

6.05   REVISED ANNUAL ASSESSMENT: If the Annual Assessment proves to exceed funds reasonably needed, then the Board may decrease the assessments payable under Section 6.03 as of the first day of a month by the giving of written notice thereof (together with a revised budget for the balance of the year and reasons for the decrease) not less than ten days prior to the effective date of the decreased assessment.

6.06   SPECIAL ASSESSMENT: The Board may levy a special assessment (i) to pay (or build up reserves to pay) extraordinary expenses incurred (or to be incurred) by the Association for a specific purpose including, without limitation, to make additions, alterations or improvements to the Common Elements, or (ii) to cover an unanticipated deficit under the current or prior year's budget. Any special assessment which will require the aggregate payment with respect to the Dwelling Unit of the greater of (a) $300 or (b) give (5) times the most recent monthly assessment shall be subject to approval by the affirmative vote of Voting Members representing at least two-thirds (2/3) of the votes cast at a meeting of the Owners duly called for the purpose of approving the assessment. Each Owner shall be responsible for the payment of the amount of the special assessment multiplied by his Dwelling Unit's Undivided Interest. The Board shall serve notice of a special assessment on all Owners by a statement in writing giving the 26 amount and reasons therefor, and the special assessment shall be payable in such manner on such terms as shall be fixed by the Board. Any assessments collected pursuant to this Section (other than those to cover an unanticipated deficit under the current or prior year's budget) shall be segregated in a special account and used only for the specific purpose set forth in the notice of assessment.

6.07   ANNUAL REPORT: Within a reasonable time after the close of the Association's fiscal year, the Board shall furnish each Owner with an itemized account of the Common Expenses for such fiscal year actually incurred or paid together with an indication of which portions of the Common Expenses for such fiscal year were incurred or paid for capital expenditures or repairs or the payment of real estate taxes, if any, and with a tabulation of the amounts collected for the Annual Assessment and showing the net excess or deficit of income over expenditures, plus reserves.

6.08   CAPITAL RESERVE: The Association shall segregate and maintain special reserve accounts to be used solely for making capital expenditures in connection with the Common Elements (the "Capital Reserve"). The Board

24

shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Common Elements and property owned by the Association as well as periodic projections of the cost of anticipated major repairs or improvements to the Common Elements or the purchase of property to be used by the Association in connection with its duties hereunder. The Capital Reserve may be built up by special assessment or out of the Annual Assessment as provided in the budget. Each budget shall disclose that portion of the Annual Assessment which shall be added to the Capital Reserve and shall also disclose (i) which portion thereof is for capital expenditures with respect to the Common Elements and (ii) which portion thereof is for capital expenditures with respect to property owned or to be owned by the Association. Special accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to the Common Elements shall be held by the Association as agent and trustee for the Owners. Special Accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to property owned or to be owned by the Association shall be deemed to have been funded by capital contributions to the Association by the Owners.

6.09     INITIAL CAPITAL CONTRIBUTION: Upon the closing of the sale of each Dwelling Unit by the Declarant to a purchaser for value, the purchasing Owner shall make a non-refundable or transferable capital contribution to the Association in an amount equal to two (2) months Annual Assessment at the rate in effect with respect to the Dwelling Unit as of the closing, which amount shall be held and used by the Association for its working capital needs.

6.10     NONPAYMENT OF ASSESSMENTS: Any assessments or other charges or payments which an Owner is required to make or is liable for hereunder which are not paid when due shall be deemed delinquent. If an assessment or other charge or payment is not paid within thirty (30) days after the due date, it shall bear interest from the due date at the contract rate of interest then permitted in Illinois but not to exceed eighteen percent (18%) per annum, and the Board (i) may bring an action against the Owner personally obligated to pay the same, together with interest costs and reasonable attorney's fees of any such action, which shall be added to the amount of such assessment or other charge or payment and shall be included in any judgment rendered in such action, (ii) may enforce and foreclose any lien which it has or which may exist for its benefit. In addition, the Board may add a reasonable late fee to any installment of an assessment which is not paid within thirty (30) days of its due date. No Owner may waive or otherwise escape liability for the assessments or other charges or payment provided for herein by nonuse, abandonment or transfer of his Dwelling Unit.

6.11     ASSOCIATION'S LIEN SUBORDINATED TO MORTGAGES: The lien of each Unit Ownership provided for in Section 6.01 for assessments or other charges or payments shall be subordinate to the lien of the First Mortgage on the Unit Ownership Recorded prior to the date that any such assessments or other charges or payments become due. Except as hereinafter provided, the lien provided for in Section 6.01 shall not be affected by any transfer

25

of title to the Unit Ownership. Where title to the Unit Ownership is transferred pursuant to a decree of foreclosure or by deed or assignment in lieu of foreclosure, such transfer of title or assignment in lieu of foreclosure shall (to the extent permitted by law) extinguish the lien for any assessments or other charges or payments under Section 6.01 which become due prior to (i) the date of the transfer of title or (ii) the date on which the transferee comes into possession of the Dwelling Unit, whichever occurs first. However the transferee of a Unit Ownership shall be liable for his share of any assessments or other charges or payments with respect to which a lien against his Unit Ownership has been extinguished pursuant to the preceding sentence which are reallocated among the Owners pursuant to a subsequently adopted annual, revised or special assessment, and nonpayment thereof shall result in a lien against the transferee's Unit Ownership as provided in Section 6.01. If for any reason the Owner of a Dwelling Unit is permitted to remain in possession of his Dwelling Unit during the pendency of a foreclosure action with respect to the Dwelling Unit, the Owner shall be required to pay a reasonable rental for such right and the plaintiff in the foreclosure action shall be entitled to the appointment of a receiver to collect such rental.

6.12    STATEMENT OF ACCOUNT: Upon seven (7) days notice to the Board and the payment of a reasonable fee, if any, which may be set by the Board any Owner shall be furnished with a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from the Owner as of the date of the statement. The statement shall be executed by a duly authorized officer or agent of the Association and shall be binding on the Association.

6.13    ESTIMATED ANNUAL BUDGET AND ASSESSMENTS: I f a n adopted budget requires assessment against the unit owners in any fiscal or calendar year exceeding one hundred fifteen percent (115%) of the assessments or the preceding year, the Board of Managers, upon written petition by unit owners with twenty percent (20%) of the votes of the Association filed within fourteen (14) days of the Board action, shall call a meeting of the unit owners within thirty (30) days of the date of filing of the petition to consider the budget. Unless a majority of the votes of the unit owners are cast at the meeting to reject the budget, it is ratified, whether or not a quorum is present. In determining whether assessments exceed one hundred fifteen percent (115%) of similar assessments in prior years, any authorized provisions for reasonable reserves for repair or replacement of the condominium property, and anticipated expenses by the Association which are not anticipated to be incurred on a regular or annual basis, shall be excluded from the computation.

6.14    RESERVES AND ADJUSTMENTS: The Board shall establish andmaintain a reasonable reserve for contingencies and replacements. Any extraordinary or nonrecurring common expenses, any common expense not set forth in the budget as adopted, and any increase in assessments over the amount adopted shall be separately assessed against all unit owners. Any such separate assessment shall be subject to approval by the affirmative vote of at least two-thirds (2/3) of the unit owners voting at a meeting of such unit owners duly called for the purpose of approving the assessment it it involves

26

proposed expenditures resulting in a total payment assessed to a unit owner equal to the greater of five (5) times the unit's most recent common expense assessment calculated on a monthly basis or three hundred dollars ($300.00). All unit owners shall be personally liable for and obligated to pay their respective adjusted monthly amount.

6.15     ASSESSMENTS RELATING TO ARBOR GLEN CONDOMINIUM ASSOCIATION: Pursuant to the Easement Agreement recorded by and between Arbor Glen Condominium Association, an Illinois not-for-profit corporation, and Standard Bank & Trust Company T/U/T No. 10483 recorded December 2, 1992 as document no. 92901512, the Association shall pay as part of its regular assessments, assessments relating to the ingress and egress over a common strip of land known as Stony Creek Drive. Said assessment shall be calculated and made a
part of the regular annual assessments paid on a monthly basis.

ARTICLE VII
REMEDIES FOR BREACH OR VIOLATION

7.01     SELF-HELP BY BOARD: Subject to the provisions of Section 7.05, in the event of a violation by an Owner of the provisions, covenants or restrictions of the Act, the Declaration, the By-Laws or rules or regulations of the Board, where such violation or breach may be cured or abated by affirmative action, the Board upon not less than ten (10) days prior written notice, shall have the right to enter upon that part of the Condominium Property where the violation or breach exists and summarily abate, remove or do watever else may be necessary to correct such violation or breach. Any and all expenses in connection with the exercise of the right provided by this Section shall be charged to and assessed against the violating Owners.

7.02     INVOLUNTARY SALE: Subject to the provisions of Section 7.05, if any Owner (either by his own conduct or by the conduct of any occupant of his Dwelling Unit) shall violate any of the covenants or restrictions or provisions of this Declaration, the By-Laws or the rules or regulations adopted by the Board, and such violations shall not be cured within thirty (30) days after notice in writing from the Board, or shall reoccur more than once thereafter, then the Board shall have the power to issue to said defaulting owner a 10-day notice in writing to terminate the rights of said defaulting Owner to continue as an Owner and to continue to occupy, use or control his Dwelling Unit, and thereupon an action may be filed by the Board against said defaulting Owner for a decree declaring the termination of said defaulting Owner's right to occupy, use or control the Dwelling Unit owned by him on account of said violation, and ordering that all the right, title and interest of said defaulting Owner in the Condominium Property shall be sold (subject to the line of any existing mortgage) at a judicial sale upon such notice and terms as the court shall determine equitable. The proceeds of any such judicial sale shall first be paid to discharge court costs, court reporter charges, reasonable attorney's fees and all other expenses of the proceeding and sale, and all such items shall

be taxed against said defaulting Owner in the decree. Any balance of proceeds, after satisfaction of such charges and any unpaid assessments hereunder of any liens, shall be paid to the defaulting Owner. Upon the confirmation of such sale, the purchaser shall thereupon be entitled to a deed to the Dwelling Unit and to immediate possession of the Dwelling Unit sold and may apply to the court for a writ of assistance for the purpose of acquiring such possession, and it shall be a condition of any such sale, the decree shall so provide, that the purchaser shall take the Dwelling Unit so purchased subject to this Declaration.

7.03    FORCIBLE DETAINERS: In the event that an Owner is delinquent in payment of his proportionate share of the Common Expenses or any other charges or payments required to be paid by the Owner hereunder, the Board shall have the right to take possession of the Owner's Dwelling Unit and to maintain for the benefit of all other Owners an action for possession in the manner prescribed by "An Act in Regard to Forcible Entry and Detainer" (as may be recodified), as provided in the Act.

7.04    OTHER REMEDIES OF THE BOARD: In addition to or in conjunction with the remedies set forth above, in the event of a violation by an Owner of the Act, this Declaration, the By-Laws, or rules and regulations of the Board, the Board may levy reasonable fines and the Board or its agents shall have the right to bring an action at law or in equity against the Owner and/or others as permitted by law including, without limitation, (i) to foreclose a lien against the Unit Ownership, (ii) for damages, injunctive relief or special performance, (iii) for judgment or for payment of money and the collection thereof, (iv) for any combination of the remedies set forth in this Article or (v) for any other relief which the Board may deem necessary or appropriate. Any and all rights and remedies provided for in this Article may be exercised at any time and from time to time cumulatively or otherwise by the Board in its discretion. The failure of the Board to enforce any provisions of this Declaration, the By-Laws or rules and regulations of the Board shall in no event be deemed a waiver of the right to do so thereafter.

7.05    ENFORCEMENT BY THE BOARD: Prior to the imposition of anyfine and concurrently with the sending of the initial notices described in Sections 7.01 and 7.02, the Board shall notify the
Owner in writing of the violation of the Act, this Declaration, the By-Laws or rule or regulation and the Board's proposed remedy. Any Owner who receives such notice may, within three (3) days after receipt of such notice, demand a hearing before the Board or its authorized committee. At such hearing a member of the Board shall present to the Owner the grounds for the notice and the Owner shall have an opportunity to challenge such grounds and to present any evidence on his behalf subject to such reasonable rules of procedure as may be established by the Board or its authorized committee, which rules shall adhere to the generally accepted standards of due process. If the Owner demands a hearing as herein provided, such hearing shall be held within four (4) days after the Board receives the demand and no action shall be taken by the Board until the hearing has been held and notice of the decision of the

28

Board or its authorized committee and the terms thereof has been delivered to the Owner. The decision of the Board or its authorized committee shall be rendered within three (3) days after the hearing and such decision shall be final and binding on the parties.

7.06      COSTS AND EXPENSES: All expenses incurred by the Board inconnection with the actions, proceedings or self-help in connection with the exercise of its rights and remedies under this Article, including without limitation, court costs, attorneys' fees and all other fees and expenses and all damages, liquidated or otherwise, together with interest thereon at the contract rate of interest then permitted in Illinois but not to exceed eighteen (18%) percent per annum until paid, shall be charged to and assessed against the defaulting Owner, and the Association shall have a lien for all the same upon his Unit Ownership, as provided in Section 6.01.

## ARTICLE VIII
## ANNEXING ADDITIONAL PROPERTY

8.01     IN GENERAL: The Developer hereby reserves the right andoption at any time and from time to time, within a period of five (5) years after the date of the recording of this Declaration in the office of the Cook County Recorder of Deeds or Registrar of Titles of Cook County, Illinois, if applicable, to add-on and annex to the Property, all or any portion of the Additional Land, and in connection therewith to reallocate percentage interest in the Common Elements as hereinafter described, by recording an amendment or amendments to this Declaration executed solely by the Developer (each such instrument being hereinafter referred to as "Amendment to Condominium Declaration") which shall set forth the legal description of the additional parcel or parcels within the Additional Land to be annexed to the Property and which shall otherwise be in compliance with the requirements of the Act. Upon the recording of each such Amendment to Condominium Declaration, the additional parcel or parcels therein described shall be deemed submitted to the Act and governed in all respects by the provisions of the Condominium Instruments and shall thereupon become part of the property. No portion or portions of the additional Land shall be subject to any of the provisions of the Condominium Instruments unless and until an Amendment to Condominium Declaration is recorded or registered annexing such portion or portions to the Property as aforesaid. The Unit Owners shall have no rights whatsoever in and to any portion of the Additional Land, unless and until an Amendment to Condominium Association is recorded annexing such portion to the Property as aforesaid. Upon the expiration of said five (5) year period, no portions of the Additional Land which have not theretofore been made a part of or annexed to the Property shall thereafter be annexed to the Property. Except as may be required by applicable laws and ordinances, there shall be no limitation (i) on the order in which portions of the Additional Land may be added to the Parcel, (ii) fixing boundaries of these portions, or (iii on the location of improvements which may be made on the Additional Land. Structures, improvements, buildings and units to be constructed on portions of the Additional Land which are added to the Property need not (except to the



**Transaction History**
Arbor Glen Condominium Association
Transaction Detail : 1/1/2018 - 9/19/2018

| | |
|---|---|
| Date: | 9/19/2018 |
| Time: | 11:21 am |
| Page: | 1 |

**Name:** GerVaise (Post) Guyton  **Address:** 12500 Arbor Drive
**Homeowner Account:** 12500  **Homeowner Status:** Current Owner

| Date | Description | Batch | Amount | Paid | Balance |
|---|---|---|---|---|---|
| 03/01/2018 | Assessment  2018 | 19152 | $ 189.00 | $ - | $ 189.00 |
| 03/16/2018 | Assessment  (Delinquent Fee) 2018 | 21825 | 25.00 | - | 214.00 |
| 04/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 403.00 |
| 04/16/2018 | Assessment  (Delinquent Fee) 2018 | 22375 | 25.00 | - | 428.00 |
| 04/26/2018 | Fine - Failure to return COI  2018 | 22551 | 25.00 | - | 453.00 |
| 05/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 642.00 |
| 05/04/2018 | KM inv# 190974 - Default Letter  2018 | 23704 | 150.00 | - | 792.00 |
| 05/16/2018 | Assessment  (Delinquent Fee) 2018 | 23897 | 25.00 | - | 817.00 |
| 06/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 1,006.00 |
| 06/16/2018 | Assessment  (Delinquent Fee) 2018 | 24402 | 25.00 | - | 1,031.00 |
| 07/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 1,220.00 |
| 07/16/2018 | Assessment  (Delinquent Fee) 2018 | 24864 | 25.00 | - | 1,245.00 |
| 08/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 1,434.00 |
| 08/08/2018 | KM inv# 193689 - Rvw status of delinquency and redemption, rvw docket re status of petition  2018 | 25316 | 71.25 | - | 1,505.25 |
| 08/16/2018 | Assessment  (Delinquent Fee) 2018 | 25495 | 25.00 | - | 1,530.25 |
| 09/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 1,719.25 |
| 09/07/2018 | KM inv# 194558 - Rvw tax status  2018 | 26888 | 142.50 | - | 1,861.75 |
| 09/16/2018 | Assessment  (Delinquent Fee) 2018 | 26969 | 25.00 | - | 1,886.75 |
| | **Total** | | **$1,886.75** | **$-** | **$1,886.75** |

CINCSystems, Inc. Copyright 2018 .  All rights reserved.



NAPERVILLE
114 East Van Buren Avenue
Naperville, IL 60540
phone 630 245 5081
facsimile 630 369 9279

April 26, 2018

**<u>Via Electronic and Regular Mail</u>**
davidsiegelbk@gmail.com
David M. Siegel
David M. Siegel & Associates
790 Chaddick Drive
Wheeling, IL 60090

      ***RE:***   ***Arbor Glen Condominium Association v. GerVaise S. Guyton***
              ***12500 Arbor Drive, Unit 1601, Alsip***
              ***Bankruptcy Case Number 18-04704***

Dear Mr. Siegel:

    Our office represents the Arbor Glen Condominium Association in the above-referenced matter. It has come to our attention that your client has failed to remain current on post-petition assessment payments. As of April 24, 2018, the post-petition balance on this account is $578.00. Enclosed please find a current statement of your client's account.

    As you know, it is your client's responsibility to remain current on her post-petition assessments. When your client fails to make regular, timely payments, the Association lacks adequate protection. Please note that assessments in the amount of $189.00 are assessed to the account each month. If the assessment remains unpaid by the 15th day of the month, a late charge in the amount of $25.00 is assessed to the account. ***If your client does not bring her account current by May 10, 2018, our office will look to file a Motion for Relief from Stay on behalf of the Association shortly thereafter. Any payment of this default should be directed to my Naperville office, in the form of certified funds.***

    Should you have any questions, please contact our office.

                                              Very truly yours,

                                              DAWN L. MOODY
                                              Attorney at Law

enclosure



**Transaction History**
Arbor Glen Condominium Association
Transaction Detail : 1/1/2018 - 4/24/2018

| | |
|---|---|
| Date: | 4/24/2018 |
| Time: | 4:36 pm |
| Page: | 1 |

**Name:** GerVaise (Post) Guyton  **Address:** 12500 Arbor Drive
**Homeowner Account:** 12500  **Homeowner Status:** Current Owner

| Date | Description | Batch | Amount | Paid | Balance |
|---|---|---|---|---|---|
| 03/01/2018 | Assessment  2018 | 19152 | $ 189.00 | $ - | $ 189.00 |
| 03/16/2018 | Assessment  (Delinquent Fee) 2018 | 21825 | 25.00 | - | 214.00 |
| 04/01/2018 | Assessment  2018 | 19152 | 189.00 | - | 403.00 |
| 04/16/2018 | Assessment  (Delinquent Fee) 2018 | 22375 | 25.00 | - | 428.00 |
| | Total | | $428.00 | $- | $428.00 |

\* Legal Fee- Post- Petition Demand   +150.00

$578.00

\* Additional legal fess incurred, but not yet posted to the account.

CINCSystems, Inc. Copyright 2018 .  All rights reserved.